No. 81-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

VIOLETTE MOEN, Individually and as
Personal Representative,

Plaintiff and Appellant,

-vs-

PETER KIEWIT & SONS' CO., a Corp.,

Defendant and Respondent.

--------------------------------

No. 82-29

VIOLETTE MOEN,

Claimant and Appellant,

-vs-

DECKER COAL COMPANY, Employer,
    and
EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY
OF WISCONSIN,

Defendant and Respondent.

Appeals from:  District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone, The Honorable
               William J. Speare, Judge presiding.  Also, Workers'
               Compensation Court, Hon. Timothy Reardon, presiding.

Counsel of Record:

        For Appellant:

            Hoyt & Trieweiler, Great Falls, Montana

        For Respondent:

            Crowley, Haughey, Hanson, Toole & Dietrich;
            L. Randall Bishop, Billings, Montana

Submitted:  July 9, 1982

Decided:  December 13, 1982

Filed: DEC 13 1982

Thomas Jr. Kearney
_____
                Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

These cases have been consolidated for consideration, as both cases involve claims for an employee's death by heart attack. We affirm the lower courts in both cases.

In Case I, Supreme Court No. 82-29, claimant Moen appeals from the order of the Workers' Compensation Court, granting defendant's motion to quash her petition for a hearing. Claimant Moen presents two issues to this Court:

(1) Whether defendant's motion to quash was procedurally acceptable.

(2) Whether newly discovered evidence supports Violette Moen's request for a new hearing.

The defendant argues that this case is res judicata.

In Case II, Supreme Court No. 81-106, plaintiff Moen appeals from an adverse jury verdict in the Thirteenth Judicial District Court, Yellowstone County, in her negligence action for the wrongful death of her husband. Moen raises the following issues for review:

(1) Did the District Court err by not allowing Mike Moen's widow to testify regarding her telephone conversation with Mike Moen the night before his death?

(2) Did the District Court err by allowing James McCarthy to testify regarding what Mike Moen did not say before Moen left for the hospital?

(3) Was the jury properly instructed?

Defendant cross-appeals, contending that the District Court erred in not granting its motion for directed verdict.

Virgil (Mike) Moen was 63 years old and had worked as an oiler for Decker Coal Company for three years, when, on Saturday, November 1, 1975, an overtime day, he suffered a

-2-

heart attack which led to his death in the Sheridan, Wyoming, hospital, early the next morning.

Moen had stayed in Decker Friday night instead of returning to Great Falls, as he usually did, to spend the weekend with his family. On Saturday morning, shortly after 8:00 a.m. at the request of his supervisor, Delmar Bradway, Moen returned to the Decker mine to work overtime steam cleaning the engines and transmissions of a number of large Terex scrapers. There were nine scrapers, but two were being repaired, and the testimony conflicts as to whether Moen cleaned seven or nine. Because the morning was frosty, Moen was not able to start steaming until about 10:00 a.m. Co-workers testified that a conscientious worker, such as Moen was admitted to be, ordinarily would take 30 to 45 minutes to clean each scraper, yet Moen was finished by noon. According to Bradway, who was the only employee working with Moen in the afternoon, the two men worked from about 1:00 to 3:30 p.m. steam cleaning the batteries and radiators of the same scrapers, with Moen driving the pickup upon which the steamer rode, and Bradway, the supervisor, doing the steaming itself. Other workers declared they had never seen Bradway do dirty work while a worker sat in the truck and that it was contrary to union policy and rules.

About 3:30 p.m., as Bradway was leaving, he noticed Moen standing beside the raised hood of his pickup; Bradway asked if anything was wrong. He noticed that Moen was changing oil, and when Moen answered no, he was all right, Bradway departed. Bradway also testified that Moen never complained of pain or exhibited any signs of illness. Moen's time card for November 1, 1975, is signed; the space wherein an employee must indicate an on-shift accident is marked "no" and initialed with Moen's initials.

James McCarthy, a close friend and co-worker of Moen's at Decker Coal, also runs the Decker store and post office, some five miles below the mine. He testified that about 3:50 or 4:50 p.m., Moen appeared at his store and the two men talked about going into town (Sheridan, Wyoming, about 30 miles away). McCarthy stated that he excused himself to continue working on a pump in the cellar, but Moen sought him out:

> "There was a knock on the door, and I came up from the cellar. And he asked me if I would drive him to town; never again stating there was anything the matter with him but he just didn't feel that--you know he wanted to go to town. I says, 'I'll be with you in about ten minutes, as soon as I put the web back into the pump.' So it must have been about 20 minutes later that I came up. Never even checked on him, went into the bathroom and cleaned up and came out to go with him, and he was gone.
>
> "Q. The last time that you saw him did he appear to you to be seriously ill?
>
> "A. No. I will say this, he was pale. In other words, he didn't look like the regular Mike full of vim and vigor."

Moen drove himself to Memorial Hospital in Sheridan, arriving about 5:30 p.m. He told the attending physician that at about 2:00 p.m. that day he had begun to feel severe pain in the left side of his chest, with pain radiating down his left arm. The pain increased in intensity for about 15 minutes, then continued at about the same intensity. Moen's condition was diagnosed as acute interior myocardial infarction. Treatment failed to relieve Moen's pain, which continued severe until, after administration of morphine, he fell asleep at about 10:00 p.m. At about 2:30 a.m., nurses noted a "dusky" coloring often associated with "pump failure"-- inability of the heart to perform due to the extent of muscle tissue impairment--and, following a breakdown of the normal sinus pattern, Moen died at 3:35 a.m.

Mike Moen's widow, Violette Moen, filed a claim for workers' compensation on September 27, 1976. Decker Coal Company denied the claim on the grounds that there was no causal relationship between Mike Moen's employment and his fatal heart attack. Following hearing and briefing, on January 29, 1979, the Workers' Compensation Court found Decker Coal Company liable to Mike Moen's widow for benefits. During that trial in the Workers' Compensation Court, Delmar Bradway was asked whether or not the work involved in steam cleaning equipment was more or less taxing than an oiler's ordinary work. Bradway replied:

> "A. It is easier than the regular ordinary duties in this case because he didn't have to climb around or do anything like that. . ."

Somewhat later in that trial, the following dialogue occurred:

> "Q. During that day [November 1, 1975] did you see Mike do any running?
>
> "A. No, I never noticed any.
>
> "Q. Any climbing?
>
> "A. No, he was doing the steaming because the transmissions are low and their engines are fairly low because he was doing the steaming from the ground, and to cover that many engines in this time, why you just can't do too good a job on anything else.
>
> "Q. Was there any occasion for him to climb stairs?
>
> "A. None."

This Court reversed on appeal, holding that claimant had not met her burden of proving Mike Moen's death had been the result of "a tangible happening of a traumatic nature from an unexpected cause or unusual strain." Moen v. Decker Coal Co. (1979), ____ Mont. ____, 604 P.2d 765, 36 St.Rep. 2220.

On January 23, 1978, Violette Moen brought a negligence action against Peter Kiewit and Sons (Kiewit), seeking

compensatory and punitive damages for the death of her husband. Kiewit is a large, Wisconsin-based corporation, which managed the Decker Coal Co. mine and provided certain supervisory personnel at the time of Mike Moen's death. Violette Moen charged that Kiewit, through its supervisor, Bradway, deliberately refused to provide first aid and medical care to Mike Moen when he was having a heart attack. She charged that, instead, the Kiewit supervisor kept Mike Moen working and compelled him to drive himself to the hospital, and that such negligence had caused Mike Moen suffering, and led to his death. A jury trial resulted in a verdict for Kiewit on January 29, 1981. Plaintiff Moen appeals.

Certain testimony of Delmar Bradway in the negligence trial differed from his testimony in the original trial in the Workers' Compensation Court. In the earlier trial, as noted above, Bradway stated that Mike Moen's regular work as an oiler was more difficult than steam cleaning because steam cleaning required no climbing around. The second action against Peter Kiewit (Bradway's employer) included the following testimony by Bradway:

> "Q. Now, Mr. Bradway, you stated that Mike didn't have to do any climbing or anything except standing on the ground to steam clean. Then, I believe you said that he had to get up in order to clean the front engine by climbing up--
>
> "A. Climbing in the operator's cab."

When questioned about earlier statements that Moen's job had been "strictly on the ground," Bradway answered:

> "A. I never thought about getting that side on the front, never gave one thought of it. But he was hired to do the job, and that was part of the job to do."

-6-

Bradway's testimony in the second action also established that although Mike Moen did not start steam cleaning the scraper engines and transmissions until 10:00 or 10:30 a.m., he had finished them by noon.

On July 8, 1981, Violette Moen petitioned the Workers' Compensation Court for a hearing. She alleged that new evidence brought out in the negligence action established that Mike Moen had done "at least 8 hours of hard, dirty work in less than 4 hours," and "had to exert and strain himself in an unusual manner in order to accomplish the work he did in the morning of November 1, 1975." Mrs. Moen maintained that this exertion was the "unusual strain" which precipitated the "tangible happening of a traumatic nature," i.e., the heart attack which caused Mike Moen's death.

Decker Coal Company moved to quash Violette Moen's petition. The Workers' Compensation Court granted the motion on January 11, 1982, and dismissed the petition with prejudice, finding "no purpose in granting another hearing when it is likely that the result will remain the same." Violette Moen appeals.

Case I - Supreme Court No. 82-29.

Claimant Moen first argues that the Workers' Compensation Court erred in considering defendant's motion to quash because no procedural rule governing the Workers' Compensation Division permits a defendant to file such a motion. Defendant's argument is that this Court should take a broad view of these uncharted administrative waters, and permit such a motion unless it is specifically prohibited.

Proceedings in the Workers' Compensation Court are governed not by the Rules of Civil Procedure, but by the Montana Administrative Procedure Act (MAPA). Dumont v.

-7-

Wickens Bros. Const. Co. (1979), ____ Mont. ____, 598 P.2d 1099, 36 St.Rep. 1471; section 39-71-2903, MCA. Sections 2-4-201 and -202, MCA, provide for agencies to adopt rules of practice and procedure. Pursuant to those statutes, the Department of Administration has set out procedural rules for the Workers' Compensation Court. § 2.52.201, et seq., Administrative Rules of Montana (A.R.M.).

Claimant Violette Moen would have this Court view her petition and defendant's motion to quash in the light of the Workers' Compensation Court rule on answers, § 2.52.202, A.R.M. (formerly Rule 2). This rule does not provide for any motions other than a motion for a more detailed petition. We do not believe the Workers' Compensation Court was so limited. § 2.52.224, A.R.M., governing rules compliance (formerly Rule 21) states:

> "If a party neglects or refuses to comply with the provisions of this sub-chapter, the Court may dismiss a matter with or without prejudice, grant an appropriate order for a party, or take other appropriate action. However, the Court may, in its discretion and in the interests of justice, waive irregularities and noncompliance with any of the provisions in the sub-chapter."

Clearly, the Workers' Compensation Court is granted broad discretion in determining whether to entertain faulty motions and petitions.

Here, claimant filed a petition for rehearing (nominally a petition for hearing) well beyond the 20 days allowed in § 2.52.222, A.R.M. (formerly Rule 19). Yet the court chose to consider the merits of the petition, because claimant alleged that new material evidence had been discovered. Defendant moved to quash the petition. Again the court chose to exercise its discretion under § 2.52.224, A.R.M., and consider the motion despite the fact that the rules do not explicitly provide for such a motion.

We find no abuse of discretion in the court's decision to consider the motion to quash. The court concluded that it would be unjust to force Decker Coal to defend again through a new trial, and a motion to quash provided the most effective means of dismissing the petition. The Workers' Compensation Court, while not governed by the Rules of Civil Procedure, may be guided by them, and to the extent that reference to those rules lies within the discretion the court may exercise under § 2.52.224, A.R.M., such reference is acceptable.

Violette Moen also argues that the Workers' Compensation Court erred in granting Decker Coal's motion to quash on the merits. She maintains that the variations in Bradway's testimony are sufficient to justify a new trial under Kartes v. Kartes (1977), 175 Mont. 210, 573 P.2d 191; and State v. Lewis (1978), 177 Mont. 474, 582 P.2d 346.

Section 25-11-102, MCA, provides that a former verdict or decision may be vacated and a new trial granted upon application if the substantial rights of the applicant were materially affected by

".  .  .

"(4)  newly discovered evidence material for the party making the application which he could not, with reasonable diligence, have discovered and produced at trial, . . ."

See also Kartes v. Kartes, supra. This decades-old standard has been fleshed out by case law establishing that the decision to grant or deny a new trial is within the sound discretion of the trial court, Fredericksen v. Fredericksen (1980), ____ Mont. ____, 605 P.2d 1135, 1137, 37 St.Rep. 191, 193, and will not be overturned absent a showing of a manifest abuse of that discretion. Giles v. Flint Val.

-9-

Forest Products (1979), ____ Mont. ____, 588 P.2d 535, 538, 36 St.Rep. 23, 26. To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear to the court that there is a reasonable probability that, upon a retrial, the evidence proposed will change the result. Gould v. Lynn (1930), 88 Mont. 501, 505, 293 P. 968, 970.

Here, the Workers' Compensation Court clearly indicated its belief that there was no reasonable probability that the new evidence would change the result upon retrial. Its rationale was set forth at length in the January 11, 1982, order granting Decker Coal's motion to quash. The court recognized that some disparity existed between Delmar Bradway's testimony at the Workers' Compensation Court trial and that in District Court, but the "new evidence [was] really cumulative and not so substantial as to overturn the decision" rendered by this Court in Moen v. Decker Coal Company, supra. The order stated:

> "All of the facts concerning the events of that morning are in the workers' compensation trial transcript with the exception of the fact that Mr. Moen had to climb up on the machines in order to steam parts of the engine. Any other facts relating to Mr. Moen's exertions on that morning could have been readily adduced under cross-examination, as they were in the district court proceeding. In addition, claimant would have to present medical testimony linking the exertions of Mr. Moen in the morning to his heart attack in the afternoon. Dr. Fletcher, claimant's medical expert, has already testified that arteriosclerosis was probably the cause of the myocardial infarction. In light of these facts, the Court sees no purpose in granting another hearing when it is likely that the result will remain the same."

We note that while a judge cannot as confidently predict the probable result of a retrial by jury, the judge here would be hearing the cause upon retrial, and is in a far better position to assess claimant Moen's chances to prevail upon

-10-

retrial.

We find that the Workers' Compensation Court did not abuse its discretion in granting Decker Coal's motion to quash. There is ample evidence on the record to support the court's conclusion that there was still not sufficient evidence linking Mike Moen's exertion on the job to his heart attack and death.

Claimant would have this Court add the new information to the facts presented at the initial trial, and conclude that Moen v. Decker Coal Company, supra, would have been decided differently by this Court. But the test set forth in Gould v. Lynn, supra, is not whether the original trial would or might have been decided differently, but whether the new evidence will probably change the result if a new trial is granted. The lower court concluded the result would probably be the same. Substantial evidence supports that conclusion, and we will not set it aside.

Decker Coal Company maintains that the matter should be res judicata, as the Workers' Compensation Court concluded in its order granting Decker Coal Company's motion to quash.

This Court has recently emphasized that the Workers' Compensation Court is entitled to finality as to its judgments in the same manner as district courts. McMahon v. Anaconda Company (1981), ____ Mont. ____, ____ P.2d ____, 38 St.Rep. 1233. Under section 25-11-102, MCA, that finality does not extend to motions for new trial on the grounds therein enumerated, whether the motions are made in the district courts or the Workers' Compensation Court.

The Workers' Compensation Court acted within its statutory and administrative authority in deciding to consider Decker Coal's motion to quash on its merits, and

-11-

did not abuse its discretion in granting the motion.

Affirmed.

Case II - Supreme Court No. 81-106.

Plaintiff Violette Moen argues that the District Court committed reversible error when it excluded, as inadmissible hearsay, her testimony that Mike Moen called her the night before his heart attack, and told her he had to stay in Decker Saturday to steam clean. This evidence conflicts with Bradway's testimony that he did not ask Mike Moen to steam clean until Saturday morning, after he noticed Moen's truck still parked by Moen's trailer. Plaintiff's sole purpose in introducing this evidence is to impeach the credibility of Delmar Bradway as to other matters. There is no causal connection between the time Bradway asked Mike Moen to work overtime and Mike Moen's heart attack and death, nor does plaintiff allege that there is.

We do not find the District Court erred in excluding Violette Moen's testimony. One cannot impeach a witness on a collateral matter. State v. Harvey (1979), ____ Mont. ____, 603 P.2d 661, 666, 36 St.Rep. 2035, 2040; Tigh v. College Park Realty Co. (1967), 149 Mont. 358, 364, 427 P.2d 57, 61; McCormick, Handbook of the Law of Evidence, § 47 at 98-99 (2d ed. 1972). Here, the question of when Bradway asked Mike Moen to work overtime is neither relevant nor material to the issue in controversy, viz., whether Kiewit, through Bradway, negligently failed to provide help to a worker stricken by a heart attack.

Furthermore, as Kiewit points out, the impeachment value of Violette Moen's testimony depends upon the jury believing the truth, not of Violette Moen's claim that her husband had called and said he had to work Saturday, but of

-12-

Mike Moen's statement that he had been told on Friday that he had to work Saturday. The testimony clearly _is_ hearsay under Rule 801(c), M.R.Evid. The testimony is not saved by being a statement of Mike Moen's state of mind, his intent, and hence an exception to the hearsay rule under Rule 803(3), M.R.Evid. Mike Moen's state of mind was irrelevant to the matter in controversy, the alleged negligence of Kiewit. When intention or state of mind is not at issue, the hearsay exception does not apply. See Ross v. Industrial Accident Board (1938), 106 Mont. 486, 495-496, 80 P.2d 362, 364-365. The District Court properly refused to allow plaintiff's hearsay evidence in support of plaintiff's attempted impeachment of Bradway on a collateral matter.

Plaintiff Moen also charges that the District Court erroneously permitted James McCarthy to testify as to what Mike Moen did not do and did not say during the time he later claimed to be suffering the heart attack. Mike Moen stopped at the Decker store after leaving work Saturday afternoon at about 4:00 P.M. He spoke with his close friend, James McCarthy, first suggesting he and McCarthy go to town together, then, about an hour later, asking McCarthy to drive him to town. McCarthy testified that Mike Moen had never stated anything was the matter with him, although he was pale and "didn't look like the regular Mike full of vim and vigor."

Plaintiff Moen argues that McCarthy's testimony was introduced "for the purpose of proving that if Moen made no complaint to McCarthy, then there was nothing wrong with him at the time." She argues that Mike Moen's silence was treated as an admission without certain foundational requirements having been met. Plaintiff Moen relies upon In Re

-13-

Neilson's Estate (1962), 57 Cal.2d 733, 371 P.2d 745, 22 Cal.Rptr. 1, in which the court held that, before a person's failure to respond to a statement could be offered as an implied admission, the offeror must establish that: (a) the statement must be one which would normally have elicited a reply; (b) the person who would normally reply must be shown to have understood the statements; (c) it must be rational to infer that the person's silence indicated his acceptance of the statement as an admission.

We do not find that McCarthy's testimony implies an admission by Mike Moen that he was not ill. Nor do we find the situation in the case at bar mandates the exclusion of McCarthy's testimony. There was no statement by McCarthy for Mike Moen to admit or deny; nor was the evidence of Moen's silence intended as proof that he was not ill. Cardiac experts testified that a man suffering a heart attack would not necessarily be incapable of moving about, talking or driving a vehicle. McCarthy's testimony was significant only insofar as it tended to prove, not that Mike Moen was not suffering a heart attack, but that he was keeping it to himself, and that, by implication, he may have done so at the Decker mine as well. This evidence is consistent with Bradway's testimony that Moen neither complained of pain nor appeared ill, and tends to absolve Kiewit of a duty to render direct aid to Mike Moen.

This Court has consistently held that the question of admissibility of evidence in every case must be left largely to the sound discretion of the trial court, subject to review only in case of manifest abuse. Cech v. State (1979), _____ Mont. _____, 604 P.2d 97, 102, 36 St.Rep. 2185, 2192; Gunderson v. Brewster (1970), 154 Mont. 405, 466 P.2d 589.

-14-

We find that the trial court did not abuse its discretion in allowing James McCarthy's testimony into evidence.

Finally, plaintiff Moen maintains that the trial court erred in refusing several of her offered instructions.

The court rejected Moen's instruction that violation of certain federal laws regarding arrangements for medical assistance constituted negligence per se, but that there was no liability unless the violation was a legal cause of plaintiff's injury. A separate instruction stating the laws was given. The court also rejected plaintiff's instruction that federal law requires that a worker not be left alone in a hazardous area. Plaintiff relies upon language in an old case, Daniels v. Granite Bi-Metallic Consolidated Mining Co. (1919), 56 Mont. 284, 184 P. 836, for the rule that violation of mining rules and regulations renders defendant liable for "damages proximately caused by the unauthorized act . . . ."

Daniels is not applicable here, where there is not sufficient evidence to suggest any rational connection between alleged violations of mining regulations by Kiewit and Mike Moen's death. Bradway's uncontradicted testimony establishes that he was with Moen from 1:00 to 3:30 P.M., Saturday afternoon; Moen told the physicians in Sheridan his chest pain began at 2:00 p.m. The fact that Moen worked by himself in an arguably hazardous area within a couple of hundred yards of others during the morning hours may establish a violation of a regulation. It does not suggest any connection with Moen's fatal heart attack later in the day. Similarly, although Bradway may have contravened union rules by steam cleaning the scraper batteries and radiators himself in the afternoon, while Moen drove the truck, there is no automatic causal relation between the violation and Moen's heart attack. Plaintiff would have this Court find that the

evidence that Bradway steam cleaned while Moen drove the truck in the afternoon is sufficient to warrant the instruction. The implication plaintiff seeks to pull from the testimony is that Bradway knew Moen was ill, but refused to treat him or let him seek treatment until the scrapers were finished, and that such neglect contributed to Moen's death by delaying his treatment. We do not find that the evidence supports the implication.

In the first place, Bradway's co-workers testified Bradway was, if anything, overcautious, a "sweater," not a person to deal casually with an emergency. Bradway himself was trained in first aid and qualified to drive the ambulance. Bradway's testimony established that weekly safety meetings (some of which Moen attended) stressed the need for employees to report illness or injury to supervisors, and indicated the constant availability of ambulance and driver, should they be needed. It was obviously common knowledge at the Decker mine that the ambulance could be manned at any time for emergency transportation to the hospital and that November 1, 1975, was no exception. Yet, the record shows that for over an hour from the time he himself claimed his pain began, Moen continued to work with Bradway without reporting his condition. He signed himself out after work, indicating no injury on shift, and drove to the Decker store to seek McCarthy's company going to Sheridan, rather than requesting an ambulance from Kiewit at the Decker mine. The only evidence that Moen may have believed aid was unavailable was plaintiff's testimony that Mike Moen told her over the telephone from the Sheridan hospital that there had been no one around to help him.

-16-

We find that the District Court committed no error in refusing the above instructions; there was insufficient evidence to require their inclusion. Furthermore, the difference between the "legal cause" referred to in the offered instruction, and the "proximate cause" referred to in Daniels, supra, could have confused and misled the jury.

Plaintiff Moen also urges this Court to find reversible error in the District Court's rejection of her instructions on "chance of survival" and "legal cause."

In both cases relied upon by plaintiff to support her "chance of survival" instruction argument, there was evidence that the defendant had failed to recognize or totally disregarded a known duty and by his "negligent action or inaction" destroyed whatever chance the decedent might have had to survive. See Hicks v. United States (4th Cir. 1966), 368 F.2d 626 (surgeon's negligent failure to identify and remove a bowel obstruction); Gardner v. National Bulk Carriers, Inc. (4th Cir. 1962), 310 F.2d 284, cert.den. 372 U.S. 913, 83 S.Ct. 728, 9 L.Ed.2d 721 (refusal of ship's master to alter course to search for missing seaman).

The District Court also rejected plaintiff's offered instruction no. 19:

> "A legal cause of an injury is a cause which is a substantial factor in bringing about the injury."

This instruction has been adopted in California. See California Jury Instructions Civil, BAJI No. 3.76 (6th ed. 1977); W. Prosser, Handbook of the Law of Torts § 41 (4th ed. 1971). Plaintiff urges its adoption by this Court.

We do not find that either "chance of survival" instructions or "legal cause" instructions are improper in Montana. But we do find that neither instruction was appropriate under the

-17-

facts of this case, and the District Court did not err in rejecting them. Both instructions depend upon plaintiff's allegation that Kiewit neglected a duty to Mike Moen, either to recognize his condition and provide direct aid or to have personnel available to render aid if Moen himself sought it. There is simply not sufficient evidence, or, in fact, any substantial evidence to support these allegations. The record strongly supports defendant's position that Moen was not left alone in the afternoon, that he did not make his condition known to and seek help from Bradway, who was trained in first aid and would have helped him, or from anyone else at the Decker mine. Plaintiff's theory of the case is not supported by evidence sufficient to give force to her argument that the disputed instructions should have been adopted.

There was no error in the District Court's rejection of the "chance of survival" instruction and the "legal cause" instruction offered by plaintiff.

Kiewit cross-appeals from the District Court's denial of its motions for directed verdict.

When a defendant moves for a directed verdict the trial court must consider only the evidence introduced by the plaintiff, in the light most favorable to plaintiff, and may not withdraw the case from the jury unless a recovery cannot be had upon any view that can be drawn reasonably from the facts the evidence tends to establish. Pickett v. Kyger (1968), 151 Mont. 87, 99, 439 P.2d 57, 63. Plaintiff's case depends primarily upon the evidence that Bradway, not Moen, did the steam cleaning in the afternoon and that Moen told his wife there was no one at work to help him when he suffered his heart attack. While that evidence is weak, a jury could conceivably have found the evidence established

-18-

Kiewit's negligence.  Therefore, the District Court properly rejected Kiewit's motions for directed verdict.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices