No. 86-370

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

ROBERT D. NELSON

        Claimant-Appellant,

   -vs-

ASARCO, INC.,

        Employer, Defendant & Respondent.

---

APPEAL FROM:  The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        SMITH LAW FIRM; Robert J. Sewell, Jr.,
        Helena, Montana

    For Respondent:

        HUGHES, KELLNER, SULLIVAN & ALKE; Stuart L. Kellner
        Helena, Montana

---

Submitted on Briefs:  March 5, 1987

Decided:  June 25, 1987

Filed:   **JUN 2 5 1987**

*Ethel M. Harrison*

---

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Robert Nelson appeals a July 14, 1986, decision of the Workers' Compensation Court which denied Nelson's claim for compensation benefits. We affirm.

Nelson presents two issues for our review:

1. Did substantial credible evidence support the Workers' Compensation Court's conclusion that Nelson failed to establish an injury arising out of and in the course of his employment?

2. Did substantial credible evidence support the Workers' Compensation Court's conclusion that Nelson failed to meet the sixty-day notice requirements of § 39-71-603, MCA?

On February 10, 1979, at age fifty-two, Robert Nelson began working for ASARCO at its East Helena smelter. On April 25, 1982, Nelson was working the day shift at the smelter. Nelson alleges that while operating a front-end loader and moving ore bodies around the yard, he stepped down to remove a forty-to-fifty pound ore body from the bucket. Nelson claims that he momentarily lost his equilibrium, felt a sense of general weakness and lost sensation in his hands and arms. He testified that his foreman, Reuben Hagen, grabbed Nelson to prevent him from falling and asked if Nelson was all right. Nelson recovered and finished working his shift. Nelson did not work on April 26 and 27, 1982, due to a sickness reported as a cold.

On April 27, 1982, Nelson complained to Dr. Jerome Kremer of pain in his left knee. Nelson did not mention any pain in his shoulder, arm or hand. He returned to work on April 28, 1982, and worked regular shifts until May 24, 1982. On May 6, 1982, Nelson saw Dr. Kremer again, this time complaining of shoulder, arm and hand discomfort.

2

On May 19, 1982, both Dr. Kremer and Dr. David Bossler reexamined Nelson and diagnosed Nelson as having thoracic outlet syndrome. At no time did Nelson advise Dr. Kremer or Dr. Bossler that he had injured himself in an accident at the ASARCO smelter. On May 27, 1982, Dr. Bossler, assisted by Dr. Kremer, surgically resected Nelson's first right rib to relieve the thoracic outlet syndrome. On June 17, 1982, Dr. Bossler, assisted by Dr. Kremer, surgically resected Nelson's left first rib.

During the time between the two rib resections, Nelson claimed benefits under ASARCO's health plan. Nelson was given a blank statement of claim form and advised how to complete it. One line of the claim form requested detailed information if an accident was involved. Nelson left this line blank. Nelson also failed to sign the claim form, but the office secretary signed the form so it could be processed. Between May 28, 1982, and February 24, 1983, under ASARCO's health plan, Nelson received $6,475 in weekly benefits and $18,353 in medical benefits.

Dr. Kremer and Dr. Bossler continued to see Nelson until November 1982, at which time he was referred to Dr. George Schemm, a neurologist, for consultation regarding persistent complaints in Nelson's upper extremities. On December 15, 1982, Dr. Schem surgically performed a cervical laminectomy on Nelson to relieve cervical spondylosis.

On July 14, 1983, fifteen months after the alleged incident, Nelson filed a claim for workers' compensation benefits. On August 4, 1983, ASARCO denied the claim. On October 10, 1985, the case was heard before an examiner, who determined that Nelson was not entitled to workers' compensation benefits. On July 14, 1986, the Workers' Compensation Court adopted the hearing examiner's proposed findings and conclusions. Nelson appeals that decision.

Issue 1

Did substantial credible evidence support the Workers' Compensation Court's conclusion that Nelson failed to establish an injury arising out of and in the course of his employment?

The hearing examiner concluded that Nelson "has not carried the burden of proving that his alleged injury of April 25, 1982, was an injury arising out of and in the course of his employment as required by §§ 39-71-119(1) and 39-71-407, MCA."

Section 39-71-119(1), MCA, defines an injury as "a tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm . . ."

Section 39-71-407, MCA, states: "Every insurer is liable for the payment of compensation . . . to an employee of an employer it insures who receives an injury arising out of and in the course of his employment . . ."

Nelson contends that the most reasonable conclusion to be drawn, from all the facts and circumstances presented at trial, is that he suffered a compensable injury while on the job at ASARCO on April 25, 1982. Nelson asserts that the strain caused by moving the ore body out of the bucket is medically consistent with causing the onset of his symptoms, and that there is no medical evidence to the contrary.

ASARCO contends that neither Nelson nor anyone on his behalf gave ASARCO notice on April 25, 1982, or within sixty days thereafter, of the time and place where an accident had occurred, or the nature of any injury resulting from such accident. Furthermore, Nelson did not inform any of his three doctors that he incurred a work-related injury on April 25, 1982. ASARCO argues that Nelson, beyond his own testimony, presented no objective evidence indicating that he

4

suffered any type of injury on April 25, 1982. Given Nelson's evidence, ASARCO concludes that the Workers' Compensation Court correctly determined that Nelson failed to meet his burden of proof in establishing a work-related injury.

When reviewing a decision of the Workers' Compensation Court, we will not substitute our judgment for the trier of fact unless the decision was clearly erroneous. Although factual conflicts may exist, we will not disturb the court's decision when it is supported by substantial credible evidence. Tenderholt v. Royal Insurance Company of America (Mont. 1985), 709 P.2d 1011, 1013, 42 St.Rep. 1792, 1795.

The burden was on Nelson to prove, by a preponderance of credible evidence, that a work-related incident was a contributing cause to his work-related injury. Dumont v. Wickens (1979), 183 Mont. 190, 201, 598 P.2d 1099, 1105. In attempting to prove the incident, Nelson testified that his foreman, Reuben Hagen, helped Nelson regain his balance and that Hagen asked if Nelson was all right.

Nelson's testimony conflicts directly with the testimony of Reuben Hagen, who stated that he and his wife were in New York City on April 25, 1982, and did not return to East Helena until 10:00 p.m. that day. Hagen's testimony was supported by ASARCO pay slips, which showed Hagen on vacation on April 25, 1982.

In addition, Nelson's conduct following the alleged incident did not indicate that an injury occurred. Nelson missed work on April 26 and 27, 1982, due to a cold, not an injury. He continued to work regular shifts through May 24, 1982, without any indication of an injury. Although Nelson underwent surgery on May 27 and June 17, 1982, he did not advise either physician about his alleged injury.

Nelson's testimony was effectively rebutted by his doctors, who believed that the condition they were treating

5

was unrelated to any trauma from Nelson's occupation. Dr. Kremer testified about thoracic outlet syndrome in the following exchange:

> Q. Based on your past experience with these kinds of problems, do you have an opinion as to how they typically manifest themselves? By that, I mean, is it a sudden onset, or do they develop over time progressively?
>
> A. It's a very gradual onset because the muscle doesn't suddenly hypertrophy. It isn't something that occurs overnight. It's something that slowly builds up. . .

Dr. Kremer also testified that Nelson's alleged incident could not cause thoracic outlet syndrome:

> Q. Doctor, in your opinion, was Mr. Nelson's scalenus anticus syndrome or thoracic outlet syndrome caused by his attempting to lift a 40-pound piece of ore off the ground at ASARCO within a month or two prior to your first examination?
>
> A. No. There's no way that a single situation can cause that to happen.

Furthermore, Dr. Bossler testified that thoracic outlet syndrome is a congenital problem. Dr. Bossler also testified that in his twenty-six years of medical practice, he has never seen a case of traumatic thoracic outlet syndrome and that Nelson had no evidence of trauma:

> Q. During that surgery, did you find anything that would be indicative of trauma that occurred recently or prior to surgery?
>
> A. No.

Dr. Schemm testified that Nelson's cervical condition arose gradually from a combination of factors:

6

> I think that his kind of problem is
> usually due to a combination of things,
> or abnormal problems. In other words,
> perhaps starting out with a narrow canal
> from earlier life, and then having, in
> addition, these wear and tear changes in
> the spinal canal and the joints of the
> spinal canal. However, individual
> trauma can accelerate that kind of
> process, or add to it.

Dr. Schemm also testified that Nelson's condition was consistent with the diagnosis of thoracic outlet syndrome, and that the condition existed for a considerable period of time prior to April 25, 1982.

In conclusion, we will accord deference to the Workers' Compensation Court's judgment as to the weight and credibility of conflicting evidence. Frost v. Anaconda Company (Mont. 1985), 701 P.2d 987, 988, 42 St.Rep. 889, 891. In the instant case, the court reviewed all the pleadings, exhibits, depositions and testimony. As we held in Steffes v. 93 Leasing Co., Inc. (1978), 177 Mont. 83, 86-87, 580 P.2d 450, 453: "We cannot substitute out judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn that decision."

We have repeatedly held that the claimant bears the burden of establishing a right to compensation. Gierke v. Billings Gazette (Mont. 1986), 730 P.2d 1143, 1148, 43 St.Rep. 2322, 2329. Nelson has failed to prove that he suffered an injury on April 25, 1982. We hold that the preponderance of substantial credible evidence fully supports the decision of the Workers' Compensation Court. We affirm on this issue.

Issue 2

Did substantial credible evidence support the Workers' Compensation Court's conclusion that Nelson failed to meet the sixty-day notice requirements of § 39-71-603, MCA?

Section 39-71-603, MCA, states:

> No claim to recover benefits under the Workers' Compensation Act, for injuries not resulting in death, may be considered compensable unless, within 60 days after the occurrence of the accident which is claimed to have caused the injury, notice of the time and place where the accident occurred and the nature of the injury is given to the employer or the employer's insurer by the injured employee or someone on the employee's behalf. Actual knowledge of the accident and injury on the part of the employer . . . is equivalent to notice. [Emphasis added.]

The Workers Compensation Court adopted the conclusion of the hearing examiner, who stated:

> The claimant did not present by a preponderance of the credible evidence any proof that sufficient notice was given to the employer to satisfy the requirements of the statute. The evidence supported the conclusion that the employer had no notice of the alleged injury for almost 400 days after the incident. This far exceeds the 60-day statutory maximum and requires the denial of the claim. [Emphasis added.]

Nelson contends that the claim period did not begin to run until Nelson had reason to recognize the serious nature of his problem. Nelson asserts that this recognition did not occur until November of 1982.

However, our review of the record shows that Nelson plainly understood the requirements and procedure for reporting an injury. He had properly reported two injuries to

ASARCO within the preceding three years. Furthermore, Nelson was instructed on the differences between workers' compensation and the ASARCO health plan at his employee orientation conference in 1979. Yet Nelson made no mention of his alleged injury to ASARCO for approximately one year after the alleged incident.

Nelson underwent two surgeries for thoracic outlet syndrome, but never told Dr. Bossler or Dr. Kremer about the alleged incident. Dr. Kremer testified: "This is one of the first questions you ask them, 'How did it happen?' Never was there a mention of it on the job or any kind of injury." Dr. Schemm's first knowledge of the incident occurred just prior to his deposition in December 1985, when Nelson's attorney told Dr. Schemm that Nelson may have injured himself on April 25, 1982.

Nelson had ample opportunity to notify ASARCO and his physicians of his alleged injury. We fail to see how Nelson, through two surgeries and multiple medical visits, could possibly misunderstand the seriousness of his condition. His alleged injury on April 25, 1982, appears to be the product of inspiration, not recognition. We hold that Nelson failed to meet the notice requirements of § 39-71-603, MCA.

We affirm the Workers' Compensation Court on both issues.

_____
Chief Justice

We concur:

_John Conway Harrison,_

_L. C. Gulbrandson,_

_____
Justices


Mr. Justice John C. Sheehy, specially concurring:

I concur in the result.

_John C. Sheehy_
Justice


Mr. Justice William E. Hunt, Sr., specially concurring:

Because claimant failed to give notice in 60 days as required by § 39-71-603, MCA, I concur in the result.

_William E. Hunt_
Justice

10