No. 87-271

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

MARK GIACOLETTO,

             Claimant and Respondent,

        -vs-

SILVER BOW PIZZA PARLOR,
             Employer,
        and
INDUSTRIAL INDEMNITY COMPANY,

             Defendant and Appellant,

_____

APPEAL FROM: The Workers Compensation Court, The Honorable Timothy
             Reardon, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

             Garlington, Lohn & Robinson; Larry W. Jones,
             Missoula, Montana

        For Respondent:

             Earl Genzberger, Butte, Montana

_____

Submitted on Briefs: March 3, 1988

Decided: March 22, 1988

Filed:

*Ethel M. Harrison*
_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Industrial Indemnity Company (Indemnity) appeals the June 2, 1987, decision of the Workers' Compensation Court. The court concluded that Giacoletto, while employed by Silver Bow Pizza Parlor (Pizza), bumped his lower back thereby causing an abscess. We affirm.

Indemnity raises four issues for our review:

1. Did the Workers' Compensation Court abuse its discretion in denying Indemnity's motions to compel and vacate?

2. Did the Workers' Compensation Court abuse its discretion in denying Indemnity's motion to strike?

3. Does substantial evidence support the decision of the Workers' Compensation Court?

4. Did claimant intentionally fail to follow medical treatment and thus prolong his disability?

Claimant Giacoletto, then age seventeen, began working part-time as a dishwasher for Pizza in October 1983. On July 1, 1984, Giacoletto bent over to lift a bucket of cheese in Pizza's supply area. He testified that he felt a "pulling sensation" in his lower back and then stumbled backwards. Claimant finished his shift. He worked the next shift on July 2 and was scheduled off on July 3 and 4, 1984. On July 5, 1984, claimant went to the emergency room of the local hospital because of back pain.

Dr. Paulo Giacomini treated the claimant in the emergency room. Dr. Giacomini is a general practitioner and the Giacoletto family physician. Claimant told Dr. Giacomini about lifting the bucket but made no mention of falling against anything. Upon examination, Dr. Giacomini detected a bump on the groove between claimant's buttocks. Dr. Giacomini suspected a pilonidal abscess, which is an

2

infection caused by ingrown hair. Claimant was then admitted to the hospital.

Dr. Giacomini asked Dr. George Poore, a surgeon, to examine claimant in the hospital. On July 7, 1984, Dr. Poore diagnosed an abscess located next to the anus. Dr. Poore specifically asked claimant about any trauma to the area, but claimant made no mention of hitting or bumping the area of the infection. Dr. Poore performed surgery on the abscess in July and again in September of 1984. Dr. Poore testified that claimant failed to regularly bathe and pack the area in accordance with the treatment plan, resulting in chronic infection. Claimant has subsequently had several more surgeries for the same condition.

On August 3, 1984, Giacoletto filed a claim for compensation, alleging that he was injured in the scope and course of his employment. Pizza was enrolled under Plan II of the Montana Workers' Compensation Act, and Indemnity was Pizza's compensation carrier. Indemnity paid some benefits to claimant under a reservation of rights and without assuming liability.

After a hearing on October 8, 1986, the court entered its decision on June 2, 1987. The court concluded that claimant had suffered an injury in the course of his employment with Pizza and that Indemnity was liable for the payment of compensation benefits. The court acknowledged that claimant's evidence was not overwhelming:

> Admittedly, the evidence in this case is a close call. . . . Some time after his original treatment, the claimant reported that in addition to straining his back when he lifted the cheese, he also struck his low back on the edge of a beer keg.
>
> There is no question that the defendant had legitimate reasons to question the

3

> claimant's credibility. As recently as the day of trial, during his deposition, the claimant did not relate having struck his back on the beer keg when questioned by defense counsel . . . Such inconsistencies standing alone would put serious doubt in the Court's mind as to claimant's veracity.

However, the court then stated that it based its conclusion primarily on the medical depositions, which tended to support claimant's testimony.

Issue 1. Motions to compel and vacate.

On August 4, 1986, Indemnity served its interrogatories on claimant. Under the rules, claimant then had twenty days to serve his answers. However, claimant did not serve his answers until September 26, 1986. In the meantime, Indemnity had filed motions to compel discovery and to vacate the hearing date on October 8, 1986. Indemnity argued that its discovery rights were prejudiced because claimant failed to comply with discovery rules in a timely manner.

The Workers' Compensation Court denied Indemnity's motion. The denial was discretionary. The court tolerated claimant's failure to answer interrogatories within the twenty-day limit, noting that "neither party can claim 'clean hands' in this case." The claimant was eventually deposed, which mitigated any prejudice to Indemnity caused by claimant's late answers. The hearing then proceeded as scheduled. We find no abuse of discretion in the court's decision.

Issue 2. Motion to strike.

During his deposition on the morning of October 8, 1986, Giacoletto made no mention of striking his back when he lifted the bucket of cheese. His case was tried that afternoon. At the hearing, claimant stated that he struck his

4

"lower back" on a beer keg when he stumbled backwards. On cross-examination, claimant testified that he erred in his deposition because defense counsel made him nervous. Seven months after his deposition, claimant amended his deposition testimony by filing a correction sheet in which he stated he struck his "tailbone."

Indemnity contends that claimant amended his version of the incident to conform with the mechanism of injury in the medical testimony. Indemnity argues that the Workers' Compensation Court abused its discretion when it allowed claimant to "tailor his testimony."

In reviewing this issue, we note that the Workers' Compensation Court may be guided by the Montana Rules of Civil Procedure. Moen v. Peter Kiewit & Sons Co. (1982), 201 Mont. 425, 434, 655 P.2d 482, 486. Under Rule 12(f), M.R.Civ.P., the court may strike inappropriate material.

In denying Indemnity's motion to strike, the Workers' Compensation Court noted the substantial discrepancy between the deposition and the correction sheet. However, the court found that claimant's trial testimony about the trauma was substantially the same as his correction sheet. The court also noted that Indemnity cross-examined claimant during trial about the discrepancies between his deposition and his trial testimony. The court concluded that the correction need not be stricken because "the weight given to the changes in the correction sheet will be de minimus." The court properly placed the greatest weight on claimant's trial testimony. We find no error in the court's discretionary decision.

Issue 3. Substantial evidence.

Indemnity contends that the evidence does not support the court's conclusion. Indemnity argues that the incident

with the cheese bucket was not the mechanism of the injury, and that claimant's testimony about striking his lower back lacks credibility. Indemnity also argues that if claimant struck anything, it was not the area of the abscess. Indemnity asserts that a pilonidal cyst encasing ingrown hair ruptured spontaneously.

When reviewing a decision of the Workers' Compensation Court, we will not substitute our judgment for that of the trier of fact unless the decision was clearly erroneous. Nelson v. ASARCO, Inc. (Mont. 1987), 739 P.2d 943, 945, 44 St.Rep. 1074, 1077. The Workers' Compensation Court had the opportunity to observe the demeanor and assess the credibility of witnesses. Although conflicts may exist in the evidence presented, the trial judge has the duty and function to resolve such conflicts. Tenderholt v. Royal Ins. Co. (Mont. 1985), 709 P.2d 1011, 1013, 42 St.Rep. 1792, 1795.

In the instant case, the chain of evidence is tenuous. Both doctors testified that the abscess "could" have been caused by trauma to the area. Regarding the proximity of trauma necessary to trigger the infection, Dr. Poore testified that the blow would have to be to the exact area of the cyst. Dr. Poore later elaborated: "Indeed, if the blow was directly to the area and indeed there was a blow, I doubt that it would have caused the initial cyst but it could have caused a subsequent infection."

Claimant gave conflicting testimony of where and if the trauma occurred, progessively defining the area as "back," "lower back," "below the belt line," and "tailbone." However, the court gave credence to claimant's testimony. The court also viewed the doctors' trauma speculation as supportive of claimant's testimony. Under the standard of Tenderholt, 709 P.2d at 1013, 42 St.Rep. at 1795, we cannot try this case "de novo." Accordingly, we defer to the lower

6

court as the trier of fact and find that the evidence sufficiently supports its conclusion.

Issue 4.  Misconduct.

Indemnity contends that claimant failed to follow his medical treatment, which prescribed applying topical antibiotics every four hours and bathing the wound several times a day.  Indemnity argues that claimant's conduct has prolonged the period of his disability.

On review of this issue, we note that the degree of claimant's misconduct required to break the chain of causation must be "intentional conduct which is clearly unreasonable."  Larson, Workman's Compensation Law, Vol. 1, § 13.22 at 3-425.

At the hearing, claimant's mother and father testified that claimant followed the medical treatment.  Claimant's condition was best summarized by Dr. Giacomini in his deposition:

> But you see, the problem is not just
> physical.  We have to look at the sub-
> ject as a whole. . . . You know this kid
> has to go around with diapers, let's put
> it that way. . . . It has interfered in
> his social relation with girls, it has
> interfered socially with his job avail-
> ability.  It has put a lot of strain in
> the family, in the household, to have a
> kid that's just loitering around, sit-
> ting in the bathtub all the time.

Dr. Giacomini further testified that claimant has become emotionally disturbed over the continuing condition.

The evidence is conflicting on the degree of claimant's cooperation.  However, the Workers' Compensation Court reasonably assumed that claimant did not intentionally endure two years of pain, embarrassment, and multiple surgeries.  In light of all the evidence and in deference to the lower

7

court, we find that claimant's actions did not rise to the level of intentional misconduct. We hold that claimant's conduct did not break the causal connection to his original injury.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____
Justices

8

Mr. Justice John Conway Harrison, dissenting.

I find that the significant, substantial and inappropriate changes in the deposition testimony of Giacoletto made over some 29 weeks after the hearing should have been stricken from the record. Here the decision of the Workers' Compensation Court should be reversed for a lack of substantial credible evidence and an order issued directing the Workers' Compensation Court to find the Industrial Indemnity Company not liable to the respondent for the payment of any workers' compensation benefits.

In addition, I would find that the respondent's refusal to follow prescribed medical treatment constituted a superseding, intervening cause that broke any chain of causation from his alleged injury to the disability for which he complains.

_____
Justice

Mr. Justice L. C. Gulbrandson joins in the foregoing dissent of Justice John C. Harrison.

_____
Justice

9