No. 02-219

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 356

WALLACE UMLAND, Individually, and
WALLACE UMLAND, as Personal Representative of
the Estate of VIRGIL UMLAND, Deceased,

Plaintiff and Appellant,

v.

NATIONAL CASUALTY COMPANY, and
AMCO INSURANCE COMPANY,

Defendants and Respondents.


APPEAL FROM:    District Court of the Third Judicial District,
                In and for the County of Granite, Cause No. DV 2000-13 and 2000-14
                The Honorable Ted L. Mizner, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            J. Allen Bradshaw, Bradshaw Law Firm, Philipsburg, Montana

        For Respondents:

            Susan Roy, Garlington, Lohn and Robinson, Missoula, Montana; Christian T.
            Nygren, Milodragovich Dale Steinbrenner and Binney, Missoula, Montana


                            Submitted on Briefs:  July 26, 2002

                                    Decided:  December 18, 2003


Filed:

        _____
                        Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Wallace Umland (Umland) appeals the judgment of the Third Judicial District Court, Granite County, denying his motion for partial summary judgment.

¶2 We address the following issues on appeal and affirm:

¶3 1. Did the District Court err in concluding that Virgil Umland was not a resident of Umland's household at the time of Virgil's death?

¶4 2. Did the District Court err in concluding that Umland's affidavit was inadmissible hearsay?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Virgil lived with his mother and Umland, his father, in Nevada from 1984 until August 1994, when Umland and Virgil's mother divorced. After the divorce, Umland moved to Montana, while Virgil stayed with his mother in Nevada.

¶6 The Nevada divorce decree awarded physical custody to Virgil's mother and granted visitation rights to Umland. Virgil's visits to Umland were at Virgil's discretion.

¶7 The Nevada divorce decree regarding custody states:

Both parties are fit and proper persons to have the joint legal and physical and legal custody of the minor child. Petitioner DIANA UMLAND is hereby ordered to have physical custody of the minor child subject to Petitioner WALLACE UMLAND's rights of visitation at all reasonable times and places, including alternate weekends, holidays, and 6 continuous weeks during the school summer vacation.

¶8 The Nevada divorce decree also ordered Umland to pay $200 per month in child support. Umland paid child support from August 1994 through December 1996, but made only two payments in 1997 and made no payments in 1998 or 1999. Umland did not pay for

2

Virgil's health insurance, nor did he pay for his half of Virgil's uncovered health expenses, although he was ordered to do so in the Nevada divorce decree. Rather, Virgil's mother fronted the costs for Virgil.

¶9    Virgil visited Umland during the summer of 1995, and Virgil moved to Montana in the fall of 1996 at the advice of a juvenile officer. He lived with Umland from October 24, 1996, to December 2, 1996, before returning to Nevada to live with his mother.

¶10    Virgil did not visit Umland during the summer of 1997, but did visit him for one month during the summer of 1998. When not visiting Umland, Virgil spent the balance of his time with his mother in Nevada.

¶11    Virgil died in a car accident on February 19, 1999. He was 15 years old.

¶12    Before his death, while in Nevada, Virgil participated in extra-curricular activities, such as football, basketball, and baseball. Virgil took a hunter's safety course in Nevada, and was also looking for part-time employment in Nevada. Further, both his medical and dental providers were located in Nevada.

¶13    After Virgil's death, Virgil's mother continued to front the costs for Virgil's funeral expenses. She established a scholarship in Virgil's name--a scholarship to which Umland admitted he had not contributed.

¶14    Also after Virgil's death, Umland's girlfriend added Umland as a named insured to her policy with AMCO. This policy provides for underinsured motorist coverage for relatives who are "residents" of the named insured's household.

3

¶15 Umland and Virgil's mother entered into a settlement agreement with Progressive Casualty Insurance Company (the insurer of the driver of the car in which Virgil was a passenger when he was killed). Umland used his share of the settlement to pay his back child support owed, as well as to contribute to Virgil's funeral expenses. As part of the settlement agreement, Virgil's mother agreed to "waive any interest she may have in and to the claim of Wallace Umland for under insured or uninsured motorist coverage under his motor vehicle insurance policy arising from the death of Virgil Harry Umland, the son of the parties hereto."

¶16 At the time of Virgil's death, National Casualty Company issued a business auto insurance policy to Umland Trucking for Umland's logging operation. This policy also provides for underinsured motorist coverage for relatives who are "residents" of the named insured's household.

¶17 The District Court found that Virgil was not a resident of Umland's household, and also excluded from evidence Umland's affidavit, which contained assertions that Virgil said he was going to stay with Umland during the summer of 1999.

¶18 Umland now appeals the District Court's judgment.

### STANDARD OF REVIEW

¶19 We review a district court's grant or denial of a motion for summary judgment *de novo*. *Cole ex rel. Revocable Trust v. Cole*, 2003 MT 229, ¶ 8, 317 Mont. 197, ¶ 8, 75 P.3d 1280, ¶ 8. The movant must prove that no genuine issues of material fact exist. Once the movant demonstrates this, the burden shifts to the nonmoving party to prove that a genuine

issue of material fact does exist. After a district court determines that no genuine issues of material fact exist, the district court must then determine whether the movant is entitled to judgment as a matter of law. *Cole*, ¶ 8. We review a district court's legal conclusions for correctness. *Cole*, ¶ 8.

## DISCUSSION

¶20 **1.** **Did the District Court err in concluding that Virgil Umland was not a resident of Umland's household at the time of Virgil's death?**

¶21 Umland argues that under Montana's statutory definition, a minor's residence is the "residence of the parent having legal custody." And, because Montana allows for joint parenting, Umland further argues it naturally follows that Montana also allows for dual residency. In addition, Umland contends that under the four-part analysis this Court articulated in *Farmers Union Mut. Ins. Co. v. Blair* (1991), 250 Mont. 52, 817 P.2d 1156, Virgil was a resident of Umland's household.

¶22 Umland also asserts that the policy language, namely the "resident of a household" language, is ambiguous, which should be construed against National Casualty Company and AMCO Insurance Company (the Companies).

¶23 The Companies argue that not only does Montana not allow dual residency, but, more importantly, Umland does not have joint custody of Virgil on which to base his residency argument. In addition, the Companies contend that Umland raises for the first time on appeal his argument that the "resident of a household" language is ambiguous. Hence, this Court should not address this argument. Finally, the Companies argue that the facts prove under

5

the four-part analysis articulated in *Farmers Union* that Virgil was not a resident of Umland's household.

¶24    Section 1-1-215, MCA, states that in determining a person's place of residence, the following shall be observed:

(1)    [A person's place of residence] is the place where a person remains when not called elsewhere for labor or other special or temporary purpose and to which the person returns in seasons of repose.

(2)    There may only be one residence. If a person claims a residence within Montana for any purpose, then that location is the person's residence for all purposes unless there is a specific statutory exception.

(3)    A residence cannot be lost until another is gained.

(4)    The residence of a minor's parents or, if one of them is deceased or they  do not share the same residence, the residence of the parent having legal custody or, if neither parent has legal custody, the residence of the parent with whom the minor customarily resides is the residence of the unmarried minor. In case of a controversy, the district court may declare which parental residence is the residence of an unmarried minor.

(5)    The residence of an unmarried minor who has a parent living cannot be changed by either the minor's own act or that of the minor's guardian.

(6)    The residence can be changed only by the union of act and intent.

¶25    We have held that the above-quoted statutory language merely provides a district court with guidelines in determining a person's place of residence. Hence, each case regarding a person's place of residence "must stand on its own facts." *Lima School Dist. No. 12 v. Simonsen* (1984), 210 Mont. 100, 110-11, 683 P.2d 471, 476.

¶26    Mindful of these guidelines, Virgil clearly resided with his mother in Nevada and was a resident of her household. Under the Nevada divorce decree, she had physical custody over Virgil, while Umland only had visitation rights. Umland exercised these rights a total of three or four months over a four-year period. Virgil's mother, not Umland, financially

supported Virgil, and, before his death, Virgil had not even been inside of Umland's house for more than seven months. The majority, if not all, of Virgil's contacts, time spent in school, and athletic involvement occurred in Nevada with the financial and emotional support of Virgil's mother. The record clearly shows that Virgil customarily resided with his mother in Nevada, thereby meeting the statutory language of § 1-1-215(4), MCA.

¶27 In addition, under § 1-1-215(4), MCA, a district court may declare which parental residence is in fact the residence of an unmarried minor. Here, the District Court did just that by declaring the mother's residence as Virgil's place of residence on the facts presented. In further support of the District Court's finding, while some states may allow dual residency, Montana clearly does not under § 1-1-215(2), MCA.

¶28 The District Court further analyzed Umland's argument by applying the four-part analysis articulated in *Farmers Union*. Umland argued in his brief to the District Court that *Farmers Union* applied if the court found that § 1-1-215, MCA, did not resolve the issue of dual residency of a minor for insurance purposes.

¶29 However, because we hold that § 1-1-215, MCA, does apply, we need not analyze the four factors articulated in *Farmers Union*, nor do we need to analyze the Companies' policy language itself.

¶30 We hold, therefore, that under § 1-1-215, MCA, the District Court did not err in determining that Virgil was not a resident of Umland's household.

¶31 **2. Did the District Court err in concluding that Umland's affidavit was inadmissible hearsay?**

¶32    Umland argues that Virgil's statement to him that Virgil intended on staying with him during the summer of 1999 was not hearsay.  He maintains that the statement fell under an exception to the hearsay rule, namely that the statement was one of Virgil's then existing state of mind as to his intent or plan.  Clearly relevant, Umland argues that the District Court erred in excluding such statement.

¶33    The Companies argue that events that could have potentially taken place after Virgil's death, and statements to that effect, are not probative of the issue at hand, namely whether Virgil was a resident of Umland's household at the time of Virgil's death.  We agree.

¶34    At issue in *Moen v. Peter Kiewit & Sons' Co.*  (1982), 201 Mont. 425, 655 P.2d 482, was whether testimony from the decedent's wife regarding a phone call she received the night before her husband's death was admissible under Rule 803(3), M.R.Evid., as his then state of mind.  Specifically, the decedent's wife desired to testify that her husband told her that he had to stay late at work to steam clean.  *Moen*, 210 Mont. at 436-37, 655 P.2d at 488.

¶35    We held that the husband's state of mind regarding his reasoning as to why he had to stay late was irrelevant to the matter in controversy, namely whether her husband's coworker negligently failed to provide help to her husband as he was having a heart attack.  *Moen*, 210 Mont. at 437, 655 P.2d at 488.  In so holding, we noted that "[w]hen intention or state of mind is not at issue, the hearsay exception [Rule 803(3), M.R.Evid.] does not apply." *Moen*, 201 Mont. at 437, 655 P.2d at 488 (citation omitted).

¶36    Here, the issue before the District Court was whether Virgil was a resident of Umland's household in Montana at the time of his death in February 1999.  As in *Moen*,

Virgil's intent on staying at Umland's house during the summer of 1999 is irrelevant to the issue here presented. Thus, we hold that the District Court did not err in excluding Umland's affidavit.

¶37 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE