

DA 08-0625

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 290

McCONE COUNTY FEDERAL CREDIT UNION,

        Plaintiff and Appellant,

  v.

TEX J. GRIBBLE AND FRED WRATISLAW,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of McCone, Cause No. DV 2005-005
Honorable Katherine M. Irigoin, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Ronald D. Allie, Allie Law Firm, Billings, Montana

        For Appellee:

            Laura Christoffersen, Christoffersen & Knierim, P.C.,
Culbertson, Montana

                Submitted on Briefs:  June 25, 2009

                      Decided:  August 25, 2009

Filed:

           _____
                   Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      McCone County Federal Credit Union (Credit Union) appeals the decision by the Seventh Judicial District Court of McCone County to grant Fred Wratislaw's motion for summary judgment. We affirm.

## ISSUE

¶2      A restatement of the issue on appeal is whether the District Court erred by granting Wratislaw's third motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      During 2002 and 2003, Tex Gribble entered into at least four loan agreements with the Credit Union. He subsequently defaulted on most, if not all, of them. Gribble secured these loans with various pieces of large equipment including tractors, a combine, a swather and a pickup truck. Notably, he did not secure them with real property he owned in McCone County.

¶4      On April 14, 2005, the Credit Union filed a complaint against Gribble seeking repayment of the loans, including interest and late fees, and the right to foreclose on the collateral. The Credit Union also requested costs and reasonable attorney fees.

¶5      Eleven days later, on April 26, 2005, Gribble transferred the real property he owned in McCone County ("the Gribble place" or "the property") to Fred Wratislaw by quit claim deed. Subsequently, the Credit Union moved to amend the pleadings to join Wratislaw as a defendant. The District Court granted the motion. On October 7, 2005, the Credit Union filed an amended complaint claiming Gribble's transfer of the Gribble place to Wratislaw was fraudulent. It alleged that Gribble made the transfer with the

2

intent to hinder and delay the Credit Union's claims, that Gribble became insolvent when he sold the Gribble place to Wratislaw, and that Wratislaw did not pay adequate consideration for the property. It asked the District Court to set aside the transfer under the Uniform Fraudulent Transfer Act, §§ 31-2-327 through 342, MCA, (UFTA or the Act) and allow the Credit Union to levy execution on the property, or its proceeds, to be applied to any future judgment against Gribble.

¶6 In November 2006, Wratislaw filed a motion for summary judgment that was denied. In June 2007, he filed a second summary judgment motion in which he argued that the Gribble place was not "an 'asset' of the debtor subject to the [UFTA]" because the UFTA excludes "property to the extent it is generally exempt under nonbankruptcy law." Section 31-2-328(2), MCA. Wratislaw submitted that the Gribble place, because it was Gribble's residence, was exempt under nonbankruptcy law, specifically §§ 70-32-101 through 303, MCA, i.e., the homestead statutes. The Credit Union responded that Gribble could not claim the exemption because he failed to declare the Gribble place as his homestead.

¶7 Additionally, the Credit Union argued that Gribble had used various other addresses on documents on file with the Credit Union and around the time he executed the quit claim deed to Wratislaw; therefore, there was a genuine issue of material fact as to whether the Gribble place was Gribble's residence. The District Court determined the Credit Union's second argument was dispositive. It denied Wratislaw's motion, ruling that Gribble's use of multiple addresses created a genuine issue of material fact regarding the true place of his residence which precluded a disposition on summary judgment.

¶8 Subsequently, the Credit Union deposed Gribble and Gribble testified that the Gribble place was his permanent residence. He explained that he used other addresses at times because he had a traveling job and was working out of state. He further testified that he had his bills sent to his mother's address so she could take care of them in his absence but that he did not live at his mother's house. He stated that he kept his personal property and business records at the Gribble place and returned there on weekends and when not working.

¶9 In June 2008, Wratislaw filed his third motion for summary judgment, opining that Gribble's deposition testimony resolved the only issue of material fact by establishing that the property was Gribble's place of residence and, therefore, was exempt under the homestead statutes. The Credit Union once again argued that Gribble failed to file a homestead declaration and, as a result, the homestead exemption did not protect him. Wratislaw countered that the UFTA did not require the filing of a declaration of homestead exemption; rather, it merely required that the property be "generally exempt under nonbankruptcy law." The District Court granted Wratislaw's motion on November 17, 2008, ruling that the Gribble place was Gribble's residence. It found that Gribble "did not relinquish residency [by using] different addresses on documents." Additionally, the court found that *In re Snyder*, 2006 MT 308, 335 Mont. 11, 149 P.3d 26, supported the conclusion "that actual residency in a place is not a requirement to property being an exempt homestead." Without analysis of the Credit Union's "failure to file the homestead declaration" argument, the District Court stated that exemptions in

4

Montana are to be liberally construed in favor of debtors. It is from this order granting Wratislaw's motion for summary judgment that the Credit Union appeals.

## STANDARD OF REVIEW

¶10 We review a district court's grant of summary judgment de novo, and apply the same criteria applied by the district court pursuant to M. R. Civ. P. 56(c). A district court properly grants summary judgment only when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. *Pennaco Energy v. Bd. of Environmental Rev.*, 2008 MT 425, ¶ 17, 347 Mont. 415, 199 P.3d 191 (citation omitted).

## DISCUSSION

¶11 *Did the District Court erroneously grant summary judgment to Wratislaw?*

¶12 On appeal, the Credit Union argues that the District Court erred by finding that the property was Gribble's residence and, therefore, exempt. It further asserts that because Gribble failed to file the declaration of homestead, the property was not protected by the homestead exemption; therefore, it is available to a third party creditor. The Credit Union submits that the District Court erred in holding that the property was exempt from the UFTA or, alternatively, that it erred by granting summary judgment because genuine issues of material fact continued to exist.

¶13 As he did before the District Court, Wratislaw maintains that the Gribble place was Gribble's residence and that his use of other addresses while holding a traveling job did not constitute a change in his legal residence. Additionally, Wratislaw once again asserts that the property was not an "asset" under § 31-2-328, MCA, because the property

5

was "generally exempt" as a homestead. He maintains that a homestead declaration need not have been filed to protect the property from a claim under UFTA or from claims of a creditor which had not yet attached at the time of the transfer. Wratislaw notes that Montana has not analyzed the issue of whether a formal filing of homestead exemption is required under the UFTA; therefore, he relies upon cases from sister jurisdictions for the proposition that a creditor cannot set aside as fraudulent a transfer of property that the debtor *could have claimed* as exempt. *Jahner v. Jacob*, 515 N.W.2d 183, 186 (N.D. 1944). Wratislaw opines that because Gribble could have claimed the property as his homestead and the Credit Union had not yet obtained judgment against Gribble at the time Gribble sold the property, the Credit Union cannot have the transfer set aside as fraudulent.

¶14 We first address whether the District Court correctly concluded that the Gribble place was Gribble's residence. Section 1-1-215, MCA (2003), establishes the rules for determining a person's residence. It provides, in relevant part:

> Every person has, in law, a residence. In determining the place of residence, the following rules are to be observed:
> (1) It is the place where a person remains when not called elsewhere for labor or other special or temporary purpose and to which the person returns in seasons of repose.
> (2) There may be only one residence. If a person claims a residence within Montana for any purpose, then that location is the person's residence for all purposes unless there is a specific statutory exception.
> (3) A residence cannot be lost until another is gained.
>
> .   .   .
>
> (6) The residence can be changed only by the union of act and intent.

6

We have held that this statute "merely provides a district court with guidelines in determining a person's place of residence. Hence, each case regarding a person's place of residence 'must stand on its own facts.' " *Umland v. National Cas. Co.*, 2003 MT 356, ¶ 25, 319 Mont. 16, 81 P.3d 500 (citation omitted).

¶15 As noted above, Gribble acknowledged that he used at least two addresses during the time he borrowed money from the Credit Union—his mother's and a post office box. The record confirms this and reveals that he used his mother's Huntley, Montana address for all loans he secured from the Credit Union in 2002 and 2003, and a post office box in Wolf Point, Montana, on the quit claim deed to Wratislaw. In his deposition, Gribble explained that he began working for a power line construction company in February 1997, and continued working for the company until November 2004. During his time with this company, he traveled extensively and was away from Montana for weeks at a time. He therefore had much of his mail delivered to his mother's house so that she could take care of his bills in his absence and forward to him significant mail that required his attention. He also had some less important mail sent to a post office box. He testified that the Gribble property was a rural route with a post office box designation. Gribble stated unequivocally in both an affidavit and his deposition that he considered the Gribble place to be his residence. He kept all his personal belongings and business records at the Gribble place and always returned to the property when not traveling for work. The Credit Union did not come forward with facts to rebut Gribble's claim that the property was his residence.

¶16   We conclude the District Court did not err in determining as a matter of law that Gribble's residence was the Gribble place. Gribble presented evidence of the requisite act and intent as required by § 1-1-215, MCA (2003). The fact that Gribble traveled for business and provided his mother's address or a post office box address does not defeat his claimed residency. *See Burchett v. MasTec North America, Inc.*, 2004 MT 177, ¶¶ 22-24, 322 Mont. 93, 93 P.3d 1247; *Independence Bank v. Halseth*, 2002 MT 100, 309 Mont. 398, 46 P.3d 657. Because the Gribble place was Gribble's residence, it qualified as his homestead.

¶17   We next address the Credit Union's claim that the Gribble property was not exempt because Gribble did not file the declaration of exemption, and therefore the transfer may be set aside as fraudulent under the UFTA. The result of setting aside a transfer under the UFTA is that the property at issue revests in the debtor who transferred it. Once the property is revested in the debtor, the creditor may make a claim against it for purposes of satisfying a judgment the creditor has against the debtor. In this case, if the transfer was set aside as fraudulent, the Gribble place would revest to Gribble and the Credit Union could seek to use the property, or the proceeds from the sale of the property, as repayment of the debt Gribble owes.

¶18   The UFTA provides, in relevant part, that transfer of an "asset" by a debtor is fraudulent as to existing and future creditors if the debtor transferred the asset with an "actual intent to hinder, delay, or defraud" a creditor, or without receiving a reasonably equivalent value in exchange for the transfer or obligation. Section 31-2-333(1), MCA. An "asset" is defined as "property of a debtor," but does not include "property to the

8

extent it is generally exempt under nonbankruptcy law." Section 31-2-328(2)(b), MCA. The issue before us is whether the Gribble place was an "asset" given that it was Gribble's homestead, and homesteads are "generally exempt under nonbankruptcy law." *See* § 25-13-615, MCA (homestead exempt from execution of judgment); § 70-32-201, MCA (homestead exempt from execution generally); *Dzikowski v. Delson (In re Delson)*, 247 B.R. 873, 875 (S.D. Fla. 2000) ("[A]n interest in homestead is 'generally exempt under nonbankruptcy law.' "). If the property does not satisfy the definition of an "asset" under the UFTA, its transfer is not subject to the Act's provisions.

¶19 The crux of the Credit Union's argument is that while the UFTA defines "asset" to exclude property that is "generally exempt" under homestead laws, to qualify as an excluded asset in Montana, property must be "expressly" or "absolutely" exempt via the debtor's compliance with the provisions of Montana's homestead statutes. In other words, it is the Credit Union's position that to be protected by the homestead exemption in Montana, whether against a claim arising in bankruptcy, under the UFTA, or in pursuit of a judgment, a debtor must have first filed the declaration required by § 70-32-105, MCA ("The person selecting a homestead must execute and acknowledge, in the same manner as a grant of real property is acknowledged, a declaration of homestead and file the same for record."). It argues that without such a filing, a homeowner in Montana is not protected by the homestead exemption. The Credit Union urges us to agree based exclusively on the language of the homestead statute rather than on the language of the UFTA. However, we conclude that since the Credit Union is seeking relief under the UFTA, we must be primarily guided by its provisions.

9

¶20    The UFTA excludes from its definition of "asset" property that is "generally exempt under nonbankruptcy law." The term "generally" means "as a rule" or "in disregard of specific instances with regard to an overall picture." Merriam-Webster Online Dictionary, retrieved July 21, 2009, from http://www.merriam-webster.com/dictionary. The majority of states plus the District of Columbia have homestead exemption laws. *See e.g.* Ala. Code § 6-10-2, Cal. Code Civ. Proc. § 704.720, Iowa Code § 561.16. The existence of homestead exemption provisions in over 45 states quite simply means that homesteads are "generally exempt" from execution or forced sales. Additionally, while some states offer automatic homestead protection (*see e.g.* Ariz. Rev. Stat. § 33-1102; Wash. Rev. Code § 6.13.040), many states, like Montana, require that a homeowner file a declaration or claim of homestead exemption. The requirement of formal declaration, however, while presumably necessary to defeat certain claims against the homeowner/debtor, is not contained in the UFTA. While the UFTA could have been drafted to include the requirement that the debtor hold a formal exemption in those states providing for such exemptions, it was not. It is not the function of this Court to insert into a statute a provision that has been omitted. Section 1-2-101, MCA. Therefore, under the statute as written, we conclude that because Gribble's homestead would be "generally exempt under nonbankruptcy law," it is not an "asset" for purposes of the UFTA.

¶21    The foregoing interpretation is consistent with Montana's tradition of liberally construing exemptions in favor of debtors. In *Snyder*, a bankruptcy proceeding, Snyder sold her home in February 2005, filed her homestead exemption for that home in

10

September 2005, and filed for Chapter 7 bankruptcy in October 2005. In her bankruptcy petition, she claimed a right to exempt $22,000 in proceeds from the sale of her home from the bankruptcy estate, under the statutory homestead exemption. The bankruptcy court was unsure of how to proceed under such circumstances; therefore, it certified the following question of law to this Court: Under Montana's liberal construction of exemptions, is a debtor allowed to trace proceeds from the sale of the debtor's home when the debtor had not filed a homestead declaration prior to selling the home? *Snyder*, ¶¶ 1-3.

¶22 We summarized the relevant statutes for establishing a homestead in Montana. We then explained that in 1987, the Montana Legislature revised the laws relating to property exempt from execution in two significant ways, one of which is relevant to our analysis here. We said that § 70-32-216(1), MCA, as amended, "provides protection for traceable proceeds from such properties if the properties '*could have* been claimed as an exempt homestead' at the time of disposal. This statutory change created the right to claim a homestead exemption, in the delineated circumstances, after the property has been disposed of, and after the person claiming a homestead exemption has vacated the property." *Snyder*, ¶ 10 (emphasis in original). We noted that while § 70-32-216(1), MCA, was inconsistent with § 70-32-106, MCA, which mandates that a homestead declaration must contain a statement that the person making the declaration is residing on the premises at the time the declaration is made, we must nonetheless liberally construe homestead and exemption laws in favor of the debtor. *Snyder*, ¶¶ 11-13. For this reason, we answered the bankruptcy court's certified question affirmatively, stating "yes, if the

11

homestead is otherwise eligible for exemption pursuant to § 70-32-216, MCA." The holding in *Snyder* clearly undercuts the Credit Union's contention that a prior formal filing of a homestead declaration is a *sine qua non* for a debtor to obtain any protections against execution.

¶23 Finally, we note that when construing a statute derived from a uniform act, it is appropriate to refer to decisions of other jurisdictions interpreting that act in order "to effectuate the general purpose of making uniform the [UFTA] among states enacting it." Section 31-2-327, MCA. We find support for our conclusion in *Farstveet v. Rudolph*, 630 N.W.2d 24, ¶ 29 (N.D. 2001) (A creditor may challenge a transfer for fraud only if the property would be subject to levy and execution if revested in the transferor. Because Rudolph could have claimed the homestead property exemption while she possessed title to it, the Farstveets cannot enforce their claim against the homestead.), and *In re Roca*, 404 B.R. 531, 542-544 (Ariz. 2009) (The Arizona UFTA could not be utilized to avoid a transfer of homestead property because a homestead is not an "asset" under the UFTA.).

¶24 In keeping with Montana's tradition of liberally construing exemptions in favor of debtors, we conclude that a homestead is not an "asset" under the UFTA and therefore is not subject to the provisions of the Act.

## CONCLUSION

¶25 For the foregoing reasons, we affirm the District Court's grant of summary judgment in favor of Wratislaw.

_____
Justice

12

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE


Justice John Warner dissents.

¶26  I dissent. As Gribble did not file a homestead exemption, as required by statute, the property in question is an asset as described in the UFTA.

¶27  I agree with the Court that because the Credit Union did not rebut Gribble's claim that the property was his residence, there is no material issue of fact, and summary judgment is appropriate.

¶28  I disagree with the Court's legal conclusion that the property is not an asset under the UFTA as it is generally exempt from execution. Section 31-2-328, MCA, provides:

> (2) "Asset" means property of a debtor, but the term does not include:
> (b) property to the extent it is generally exempt under nonbankruptcy law;

¶29  Section 70-32-105, MCA, relating to the protection of a homestead from execution, provides:

> The person selecting a homestead must execute and acknowledge, in the same manner as a grant of real property is acknowledged, a declaration of homestead and file the same for record.

¶30  This Court is to harmonize statutes as much as possible, giving effect to each of them. *Yellowstone Federal Credit Union v. Daniels*, 2008 MT 111, ¶ 18, 342 Mont. 451, 181 Mont. 595; § 1-2-101, MCA. It is not appropriate to look primarily at one statute and

13

relegate another to a secondary status, as the Court does at ¶ 19. Sections 31-2-328 and 70-32-105, MCA, are not in conflict. The property in question is an asset of Gribble and it is not generally exempt—it is not exempt at all, unless and until he selects it as a homestead. He did not do so. The Court's decision today renders § 70-32-105, MCA, meaningless.

¶31 I would reverse and remand for a trial on whether the transfer from Gribble to Wratislaw was fraudulent under the UFTA. I dissent.


/S/ JOHN WARNER