**623 PARTNERS, LLC,**
**Plaintiffs and Appellees,**
**v.**
**GLENDA HUNTER, Individually and as Trustee**
**of the R. LARRY TODD HUNTER and GLENDA**
**HUNTER MONTANA REVOCABLE TRUST,**
**Defendants,**
**LARRY TODD HUNTER,**
**Defendant and Appellant.**

No. DA 16-0234.
Submitted on Briefs November 2, 2016.
Decided December 20, 2016.
2016 MT 336.
386 Mont. 24.
385 P.3d 963.

For Appellant: **J. Tiffin Hall**, Attorney at Law, Eureka.

For Appellees: **Sean S. Frampton**, Morrison & Frampton, PLLP, Whitefish.

JUSTICE BAKER delivered the Opinion of the Court.

¶1   623 Partners, LLC, obtained a judgment against Larry Hunter Development Co. and R. Larry Hunter (Larry) in 2011. In its effort to satisfy the judgment, 623 Partners claimed that property originally owned by Hunter Development was fraudulently transferred to Larry's son, Larry Todd Hunter (Todd), in order to avoid subjecting the property to 623 Partners' writ of attachment. The Nineteenth Judicial District Court concluded that the property was fraudulently transferred and that Todd was liable to 623 Partners for the proceeds he received from the sale of a parcel of the property. We upheld those determinations in *623 Partners, LLC v. Hunter*, 2014 MT 282N, 377 Mont. 433, 348 P.3d 169 (Table) (hereafter *Hunter I*).[1] On remand, Todd argued that the property was exempt from execution or forced sale because he had claimed it as his homestead, and that he was entitled to an offset from the judgment amount based on the value of the improvements that he made to the property. The District Court rejected Todd's assertions.

¶2   We conclude that Todd is not entitled to a homestead exemption or an offset. We therefore affirm the District Court.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3   Larry and Glenda Hunter owned and operated Hunter Development, which developed residential subdivisions in Georgia and Montana. Todd moved to Fortine, Montana, in 2002 and ran a contracting business. Shortly after Todd moved to Montana, Hunter Development purchased a number of parcels of land near Fortine. Todd built a home and made other improvements on a parcel of the Fortine property beginning in 2006.

¶4   Hunter Development executed and delivered a promissory

---

[1] Montana Supreme Court Internal Operating Rules, Section I, Paragraph 3(d)(v) provides in pertinent part that noncitable opinions "shall not be cited or relied upon as authority in any litigation in any court in Montana except when the decision establishes the law of the case."

note—the loan obligation underlying this action—to Georgia State Bank in May 2007. Hunter Development secured the promissory note with real property it owned in Georgia and with Larry's personal guaranty. The promissory note and guaranty were subsequently transferred and assigned to 623 Partners.

¶5 Shortly after executing the promissory note, Larry and Glenda formed the R. Larry Hunter and Glenda Hunter Montana Revocable Trust (Trust). In June 2007, Larry and Glenda conveyed three parcels of the Fortine property to the Trust through a quitclaim deed for no consideration. The parcels were to be held by the Trust and distributed to the Hunters' children when Larry and Glenda died.

¶6 Hunter Development and Larry defaulted on their payment obligations under the promissory note in May 2008. Later that month, the Trust and Todd entered into a purchase agreement for the parcels of the Fortine property held by the Trust. The Trust conveyed the parcels to Todd by warranty deed. Todd made only one payment to the Trust under the purchase agreement. Todd later sold one of the parcels but did not pay the Trust the full amount of the proceeds from the sale. In February 2011, Todd claimed as his homestead the parcel with his home and improvements, as provided in Title 70, Chapter 32, MCA.

¶7 623 Partners filed suit against Hunter Development and Larry in Georgia prior to Todd's homestead declaration. It obtained a judgment against them in the amount of $1.2 million. In April 2011, 623 Partners filed this claim in the Nineteenth Judicial District Court seeking to set aside alleged fraudulent transfers of the Fortine property. 623 Partners also recorded a *lis pendens* on the remaining parcels.

¶8 The District Court granted 623 Partners partial summary judgment. The court held: (1) that the Trust's conveyance of the Fortine property to Todd was a fraudulent transfer pursuant to § 31-2-334(2), MCA, and was "accordingly void, set aside, and annulled"; (2) that Larry and Glenda's conveyance of the Fortine property to the Trust was not a qualifying transfer under § 31-2-328(12), MCA, was made in violation of § 31-32-334(2), MCA, and was "accordingly void, set aside, and annulled"; (3) that the Fortine property was subject to 623 Partners' writ of attachment for purposes of satisfying its judgment against Hunter Development and Larry; and (4) that Todd was liable to 623 Partners for the proceeds he received from the sale of the parcel of the Fortine property. The court ordered that the Fortine property could not be transferred or encumbered and that the property was to be sold in order to satisfy 623 Partners' judgment against Hunter Development and Larry.

¶9 Todd filed a motion requesting relief from the District Court's

judgment and for a stay of the sale of the property. Todd argued, in part, that he was entitled to an offset from the judgment amount based on the value of the improvements that he made to the property and that the property was exempt from execution or forced sale because he had claimed it as his homestead. The District Court stayed the execution and sale of the Fortine property, but declined to decide Todd's offset and homestead exemption claims before 623 Partners attempted execution. Todd then appealed the District Court's grant of summary judgment to 623 Partners. We affirmed the District Court's order and remanded for further proceedings on Todd's homestead exemption claim. *Hunter I*, ¶ 31.

¶10 On remand, 623 Partners moved for summary judgment on Todd's homestead exemption claim. Todd moved for an order granting his homestead exemption and offset claims. The court granted 623 Partners summary judgment regarding the homestead exemption but concluded that it lacked jurisdiction over the offset issue due to an order in a related proceeding in the United States Bankruptcy Court for the District of Montana. The Bankruptcy Court then issued an order authorizing the District Court to address the offset issue. Todd renewed his motion for an offset, which the District Court denied. Todd appeals the District Court's grant of summary judgment to 623 Partners regarding his homestead exemption claim and the District Court's denial of his motion for an offset.

## STANDARD OF REVIEW

¶11 We review summary judgment rulings de novo, applying the standards set forth in M. R. Civ. P. 56(c)(3). *Citizens for a Better Flathead v. Bd. of Cnty. Comm'rs*, 2016 MT 256, ¶ 10, 385 Mont. 156, 381 P.3d 555. We review a district court's conclusions of law to determine whether they are correct. *Citizens for a Better Flathead*, ¶ 10.

## DISCUSSION

¶12 *1. Whether the District Court correctly concluded that Todd did not qualify for a homestead exemption.*

¶13 Relying in part on *McCone County Federal Credit Union v. Gribble*, 2009 MT 290, 352 Mont. 254, 216 P.3d 206, the District Court concluded that Todd did not qualify for a homestead exemption because he never owned the property. The court reiterated that Todd obtained the property through a preferential transfer pursuant to § 31-2-334(2), MCA, and thus that the transfer qualified as a fraudulent transfer

under Montana's Uniform Fraudulent Transfer Act (UFTA), §§ 31-2-326 to -342, MCA. Because Todd obtained the property through a fraudulent transfer, the court reiterated that the transfer had been set aside and that the property had revested in the Trust. The court noted that we upheld these determinations in *Hunter I*. The court clarified that, based upon its earlier rulings, "Todd was never the rightful owner of the property." Relying on authority from other states pertaining to homesteads, the court concluded that Todd could not claim a homestead exemption because he never owned the property.

¶14 In *Hunter I*, we affirmed the District Court's conclusion that the Trust's conveyance of the property to Todd qualified as a fraudulent transfer under the UFTA. *Hunter I*, ¶ 23. We affirmed further the District Court's conclusion that the property revested in the Trust and was subject to execution by 623 Partners. *Hunter I*, ¶ 24; *accord Gribble*, ¶ 17 (concluding that when a transfer is set aside as fraudulent under the UFTA, "the property at issue revests in the debtor who transferred it," and "the creditor may make a claim against it for purposes of satisfying a judgment the creditor has against the debtor"). Our decision affirming the District Court's judgment established the law of the case that, as the District Court held, the transfer was "accordingly void, set aside, and annulled." *See Fiscus v. Beartooth Elec. Coop.*, 180 Mont. 434, 437, 591 P.2d 196, 197 (1979) (concluding that when we state in an opinion "a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress") (citation and internal quotations omitted). The District Court therefore correctly clarified upon remand that Todd never lawfully owned the property. *See* § 31-2-339(1)(a), MCA (providing that under the UFTA, a creditor may obtain "avoidance of the transfer ... to the extent necessary to satisfy the creditor's claim"); 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 116 (2015) (providing that a fraudulent transfer "is void or voidable and will be set aside in a proper proceeding"). The purpose of remand was to allow the District Court to determine whether Todd could avail himself of any exemptions from execution.

¶15 Homesteads generally are "exempt from execution or forced sale." Section 70-32-201, MCA. The homestead exemption applies to the UFTA. *Gribble*, ¶ 24 (concluding that "a homestead is not an 'asset' under the UFTA and therefore is not subject to the provisions of the Act"). Thus, if Todd properly could claim the property as a homestead, the property would not be subject to execution by 623 Partners.

¶16 We have not directly considered whether a person may claim a

homestead on property that he or she has never lawfully owned. We have, however, addressed whether a person could protect the proceeds from the sale of a home she owned when she filed a homestead declaration after selling the home. *In re Snyder*, 2006 MT 308, 335 Mont. 11, 149 P.3d 26. Snyder had sold her home in February, filed her homestead exemption in September, and filed for Chapter 7 bankruptcy in October. *Snyder*, ¶¶ 2-3. In concluding that she had the right to exempt a portion of the proceeds from the sale of her home from the bankruptcy estate, we noted that the UFTA "provides protection for traceable proceeds from [properties that have been sold or taken by condemnation] if the properties '*could have been claimed as an exempt homestead*' ... at the time of disposal." *Snyder*, ¶ 10 (quoting § 70-32-216, MCA) (emphasis in original). *Snyder* thus establishes that a claimant does not have to own the property when she files a homestead exemption so long as the property could have been claimed as a homestead in the first place.

¶17 In construing a statute, we look "to the plain meaning" of its language, and we read the "statute as a part of a whole statutory scheme." *Eldorado Coop Canal Co. v. Hoge*, 2016 MT 145, ¶ 18, 383 Mont. 523, 373 P.3d 836 (citations and internal quotations omitted). Chapter 32 of Title 70, MCA, sets forth a number of requirements for establishing a homestead. Sections 70-32-101 to -107, MCA. Significantly, § 70-32-103, MCA, entitled, "From whose property homestead may be selected," provides that a married couple may select a homestead "from the *property of either spouse*," and an unmarried person may select a homestead "from any of the *claimant's property*." (Emphasis added.) The statute's plain language establishes that a person may select a homestead from *his or her property* only. Reading the Homestead Act as a whole supports this conclusion. *E.g.*, § 70-32-104(2), MCA ("If a claimant who is *an owner* of an undivided interest in real property claims a homestead exemption ....") (emphasis added); § 70-32-216(1), MCA ("If property ... that could have been claimed as an exempt homestead has been sold ... and *the owner* has been indemnified for the property, *the owner* is entitled for 18 months to exemption of the proceeds that are traceable.") (emphasis added). Restricting a person to claiming a homestead on property the person owns—or has owned—furthers one of the homestead exemption's primary purposes: "to promote the stability and welfare of the state by encouraging property ownership." 40 Am. Jur. 2d Homestead § 4 (2015).

¶18 ■ While the homestead exemption may protect property from

execution or forced sale under the UFTA, *Gribble*, ¶ 24, the property has to qualify as a homestead in the first place, *Snyder*, ¶ 10. Todd's title to the Fortine property derived from a fraudulent transaction. Because that transaction was declared void, Todd never owned the property. Todd could not claim the property as a homestead. The District Court correctly applied the law on this point.

¶19 *2. Whether the District Court correctly concluded that Todd was not entitled to an offset for improvements he made to the property.*

¶20 The District Court determined that even though Todd's claim for an offset suffered from a number of procedural flaws, it also lacked substantive support in the law. The court noted that § 31-2-340(6)(a), MCA—upon which Todd initially based his offset claim—was not applicable to the circumstances of this case, in part because the improvements Todd made to the property were completed before the Trust transferred the property to him. Thus, the court concluded, "The improvements made prior to the transfer were merged with the real property when it was conveyed and cannot be separated." The court determined that the statute was further inapplicable because "[a]ny 'new value' given by the improvements were for Todd Hunter's (found to be an 'insider') benefit, not 'to or for the benefit of the debtor,' as required by § 31-2-340(6)(a), MCA." The court concluded that Todd could not rely on § 31-2-340(6)(a), MCA, because it "is designed to protect an insider who is also an unsecured creditor of the debtor" and Todd was not a creditor of Larry. Finally, the court concluded, the general offset doctrine "applies only to parties who are mutually indebted." The court noted that Todd did not, and could not, claim that 623 Partners was indebted to him. The District Court thus concluded that Todd could not claim an offset.

¶21 On appeal, Todd argues that the District Court incorrectly determined that he was not entitled to recover the value of his labor and improvements he made to the property. Todd contends that public policy and equitable considerations support his position. He asserts that "the UFTA does not provide any statutory or legal protection for a transferee who loses his property when there is a narrow finding of a preferential transfer under § 31-2-334(2), MCA." Without developing his argument, Todd contends that principles of law and equity supplement the UFTA's provisions pursuant to § 31-2-342, MCA. Todd asserts further that "it is well established that a district court may accept jurisdiction in equity when no statutory or legal remedy is available." Accordingly, Todd contends, we should invoke our equitable authority and conclude that he "is entitled to receive an offset or credit

for the value of his labor and improvements he made to the property."[2]

¶22 Section 31-2-340(6), MCA, affords transferees who receive assets through a preferential transfer pursuant to § 31-2-334(2), MCA, three possible defenses to forestall avoidance of the transfer. Yet, as the District Court concluded—and Todd apparently concedes on appeal—the statute is inapplicable to the circumstances of this case. While Todd does not contest the District Court's determination regarding the statute's applicability, he does contend that he is entitled to an equitable interest or credit for the value of his labor on and improvements to the property based on principles of law and equity.

¶23 As Todd points out, the provisions of the UFTA may be supplemented by other principles of law and equity. Section 31-2-342, MCA, provides:

> Unless displaced by the provisions of this part, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement its provisions.

The statute makes clear that unless the UFTA provides otherwise, other remedies may be available outside the UFTA. *See Gulf Ins. Co. v. Clark*, 2001 MT 45, ¶ 42, 304 Mont. 264, 20 P.3d 780 (relying on § 31-2-342, MCA, to observe that "another remedy at equity or law [outside the UFTA] may be available" to a creditor). Based on provisions nearly identical to § 31-2-342, MCA, other courts have recognized that principles such as estoppel, laches, and waiver may be invoked as a defense in fraudulent transfer actions. *E.g., Sheffield Steel Corp. v. HMK Enters.*, 320 B.R. 423, 452-54 (Bankr. N.D. Okla. 2004); *Reitmeyer v. Meinen*, 232 B.R. 827, 843-44 (Bankr. W.D. Pa. 1999).

¶24 But beyond his general assertion of fairness, Todd has not articulated what, if any, principles of law and equity apply. Such principles require the party relying on them not only to assert them, but to make certain showings. *See, e.g., McKay v. Wilderness Dev., LLC*, 2009 MT 410, ¶ 29, 353 Mont. 471, 221 P.3d 1184 (defense of waiver must be affirmatively pled); *Cole v. State ex rel. Brown*, 2002

---

[2] 623 Partners contends that the District Court lacked jurisdiction to address Todd's offset claim because Todd did not preserve the claim in the first appeal. Todd counters that the District Court expressly reserved ruling on the issue until 623 Partners attempted execution. Given the procedural history, we find it appropriate to address Todd's claims on the merits.

MT 32, ¶ 25, 308 Mont. 265, 42 P.3d 760 (concluding that "in order to apply the doctrine of laches, a showing must be made that the passage of time has prejudiced the party asserting laches or has rendered the enforcement of a right inequitable"); *City of Whitefish v. Troy Town Pump*, 2001 MT 58, ¶ 20, 304 Mont. 346, 21 P.3d 1026 (concluding that the "six elements of equitable estoppel must be established, and by clear and convincing evidence"). It is not our responsibility "to conduct legal research on behalf of a party or to develop legal analysis that might support a party's position." *State v. Gunderson*, 2010 MT 166, ¶ 12, 357 Mont. 142, 237 P.3d 74. Consequently, we decline to determine whether any established principles of law and equity could entitle Todd to recover the value of his labor and improvements made to the property. We accordingly conclude that the District Court properly determined that Todd was not entitled to an offset.

## CONCLUSION

¶25 We affirm the District Court's orders and judgment.

CHIEF JUSTICE McGRATH, JUSTICES McKINNON, SHEA and RICE concur.